UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KARI JOHNSON, et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>AVCO CORP., et al., )<br>)<br>Defendants. ) | Case No. 4:07CV1695 CDP |

# MEMORANDUM AND ORDER

Several defendants in this case move for a determination of what state's law applies to this wrongful death action arising out of an airplane crash. The plane crashed in Indiana, and plaintiffs allege that the crash was caused by defendants' defective design and maintenance of the airplane's engine in other states. These defendants contend that the law of the place of injury, Indiana, should apply to issues of liability and compensatory and punitive damages, but the plaintiffs argue for the application of Missouri law because some defendants allegedly committed misconduct there. Applying the Second Restatement's most significant relationship test as required by Missouri choice-of-law rules, I conclude that Indiana law should apply to all three issues because Indiana, as the place of injury, has the most significant relationship to the parties and occurrence.

## Background

On September 10, 2005, John and Kathleen Swan, along with their son, James Swan, and his friend, Vanessa Baer, were killed after their airplane crashed near Wabash Municipal Airport in Wabash, Indiana. All the decedents were Indiana residents, and the plaintiffs, their representatives, are also Indiana residents. The decedents left earlier from Wabash, Indiana to go to Rochester, Indiana, and the accident occurred on their return flight from Rochester. John Swan purchased the airplane in Missouri, but he was an Indiana resident at all times when he owned it and stored it in Indiana.

On October 2, 2007, plaintiffs brought suit in Missouri Circuit Court for the City of St. Louis alleging strict liability and negligence by seventeen defendants who serviced or manufactured parts of the aircraft. Since that time, eight of the defendants have been dismissed from the case. Four of the remaining defendants – Avco, Lycoming, Textron ( together the "Textron defendants"), and Western Skyways – filed a joint motion for a determination that Indiana law applies to this case. Part of the plaintiffs' theory of the case is that defendant Lycoming defectively designed and manufactured the airplane engine in Pennsylvania, and defendant Western Skyways negligently performed maintenance on the engine in Colorado. They also allege that the Missouri defendants – Ozark Aircraft

Maintenace LLC, Air Evac Aviation, Inc., Air Evac, Inc., and Air Evac EMS, Inc. – performed defective maintenance on the airplane engine in Missouri.

The Textron and Western Skyways defendants argue that Indiana law applies to all issues in this case, contending that Indiana has the most significant relationship to the parties. They also allege that the Missouri defendants will be dismissed shortly because they have settled with the plaintiffs. Lycoming manufactured the engine in Pennsylvania and continues to operate in Pennsylvania as a division of Avco and wholly owned subsidiary of Textron. Textron and Avco are citizens of Delaware and have their principal place of business in Rhode Island. Western Skyways performed maintenance on the engine in Colorado and is a Colorado corporation with its principal place of business in Colorado.

## **Discussion**

A district court sitting in diversity must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Wolfley v. Solectron USA, Inc.*, 541 F.3d 819, 823 (8th Cir. 2008). When determining choice-of-law issues, Missouri courts apply the "most significant relationship" established by the Restatement (Second) of Conflicts of Law. *Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo. 1969). For wrongful death actions, Second Restatement Section 175 creates the presumption that "the local law of the

state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship" to the parties and occurrences.  Restatement (Second) of Conflict of Laws § 175 (1971).

To determine whether a state has a more significant interest than the state of injury, Missouri courts apply Second Restatement Section 145, which provides two sets of criteria for determining the state with the most significant relationship. *Natalini v. Little*, 185 S.W.3d 239, 248-50 (Mo. Ct. App. 2006); *Goede v. Aerojet General Corp.*, 143 S.W.3d 14, 25 nn. 7 & 8, 26 (Mo. Ct. App. 2004); *see also In re Air Crash Disaster Near Chicago, Ill., on May 25, 1979*, 644 F.2d 594, 611 (7th Cir. 1981) (turning to Section 145 to determine if a state other than the state of injury has a more significant relationship in a wrongful death action).  First, courts must consider whether a state has a more significant interest under the principles stated in Second Restatement Section 6, which include:

> (a) the needs of the interstate and international systems;
> (b) the relevant policies of the forum;
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
> (d) the protection of justified expectations;
> (e) the basic policies underlying the particular field of law;
> (f) certainty, predictability and uniformity of result; and
> (g) the ease in the determination and application of the law to be applied.

Restatement (Second) of Conflicts of Law § 6.  Second, courts must consider the following contacts when applying the Section 6 principles: (1) the place of the injury; (2) the place of misconduct; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship between the parties is centered.  *Id.* § 145(2).

Second Restatement Analysis

As previously mentioned, Section 175 calls for states to apply the substantive laws of the "state where the injury occurred," unless some other state has a more significant relationship to the parties and occurrence under the principles listed in Section 6.  Restatement (Second) of Conflicts of Law § 175.[1]  In this case, the decedents died after an airplane crash in Wabash, Indiana.  Accordingly, Indiana is the state "where the injury occurred" under Section 175, and Indiana law should apply unless, with respect to some particular issue, another state has a more significant relationship to the occurrence and parties under the criteria listed in Sections 6 and 145.  *See id.* § 175; *Natalini*, 185 S.W.3d at 248; *Chicago*, 644 F.2d at 611.

---

[1] With respect to damages for wrongful death actions, Restatement Section 178 provides that the state law selected by Section 175 determines the measure of damages. Restatement (Second) of Conflict of Laws § 178 (1971).

Relevant Section 6 Interests and Section 145 Contacts

In tort actions such as the present one, the only relevant Section 6 factors are those established in paragraphs (b), (c), and (e), which deal with the "policies and interests of the jurisdictions involved and the field of law to be applied." *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1359 (8th Cir. 1994) (applying Missouri conflicts-of-law rules). The needs of the interstate and international systems, paragraph (a), are not typically implicated by actions arising from torts. *Id.* Paragraphs (d) and (f), "which deal with protection of justified expectations and certainty, predictability, and uniformity of result, are implicated only minimally" in cases "arising from accidents" because "persons who unintentionally cause injury usually act without contemplating the law" to be applied. *Id.* (citing Restatement (Second) of Conflicts of Law § 145 cmt. b). Finally, consideration of the ease in determining and applying the law, paragraph (g), points in favor of applying the state of injury's law to all three issues because of the ease in applying only one state's laws. *Natalini*, 185 S.W.3d at 254. But this "policy should not be overemphasized, since it is obviously of greater importance that choice-of-law rules lead to desirable results." *Id.* at 254 (quoting Restatement (Second) of Conflicts of Law § 6(2) cmt. j).

In this case, the states with relevant contacts under Section 145 include: (1) Indiana, the state of injury; (2) Missouri, Pennsylvania, and Colorado, the places of misconduct; (3) Indiana, Pennsylvania, Rhode Island, and Colorado, the parties' domicile, residence, and places of incorporation and business; and (4) the place where the relationship between the parties is centered. Because this case arises out of an airplane crash, it is not clear where the relationship among the parties is centered. The moving defendants contend that the parties' relationship is centered in Indiana because the crash occurred there and all decedents were Indiana residents. By contrast, the plaintiffs think the relationship is centered in Missouri because the Ozark defendants allegedly committed some negligence in Missouri, and decedent John Swan bought the plane and its allegedly defective engine in Missouri. It is undisputed that other defendants manufactured or serviced parts in Pennsylvania and Colorado. Although the crash was in Indiana, none of the defendants committed their alleged misconduct in Indiana. The plaintiffs lived in Indiana, but the defendants did not have business interactions with them in that state. Thus, although there are contacts with Missouri, Indiana, Colorado, and Pennslyvania, the relationship among the parties is not centered in any state because the contacts with each of these states were so limited. Accordingly, I do not find the place where the parties' relationship was centered determinative.

The "Restatement approach does not require that all issues in a particular case be controlled by the law of the same state." *Goede*, 143 S.W.3d at 25. Instead, under the conflicts-of-law doctrine of dépéçage, different issues in a single case may be decided by laws of different states, if those states have the most significant relationship to those particular issues. *Id.*; *see also Chicago*, 644 F.2d at 611 (approving the use of dépéçage to apply "rules of different states on the basis of the precise issue involved."). Accordingly, I will consider which state has the most significant relationship to the parties and occurrence for each issue: liability, compensatory damages, and punitive damages.

## Liability

In determining issues of liability, Missouri courts have long applied "the standards of conduct of the state where the alleged tort occurs," unless some other state has a more significant relationship with respect to that issue. *Olson v. Empire Dist. Elec. Co.*, 14 S.W.3d 218, 222 (Mo. Ct. App. 2000) (citing *Kennedy*, 439 S.W.2d at 185); *see also Natalini*, 185 S.W.3d at 250. Specifically, Missouri courts apply the law of the place of injury to determine liability when the conduct causing the injury and the injury occur in the same state. *See id.* at 221 (noting that the "general rule" for Missouri courts "is that the law of the state where the conduct and injury occur will apply to determine whether the actor satisfied

minimum standards of acceptable conduct . . ."). When, however, the defendant's conduct and the plaintiff's injury occur in separate states, the "choice of law becomes more complex." *Dorman*, 23 F.2d at 1358-59. In such situations, Missouri courts apply the state of injury's law

> when the decedent had a "settled relationship" to that state unless the decedent had either or both a settled relationship with the state of conduct or the injury occurred in the course of an activity or of a relationship which was "centered" in the state of conduct.

*Natalini*, 185 S.W.3d at 249.

Here, all parties agree that the decedents were killed in Indiana and were Indiana residents. The parties also agree that the Textron defendants committed their alleged misconduct in Pennsylvania, and defendant Western Skyways committed its alleged misconduct in Colorado. Because Indiana is the state of injury and decedents had a settled relationship with it, Indiana law should apply unless some other state has the most significant relationship. *See id.* at 250. Considering the interests and policies of the states with contacts to the parties and occurrence, however, I conclude that no other state has a more significant relationship to the parties that justifies the application of its law as to the issue of liability.

In particular, courts applying Missouri choice-of-law rules recognize that states of conduct, here Missouri, Pennsylvania, and Colorado, have some interest in applying their own laws to regulate misconduct within their own states. *See id.* at 252; *Dorman*, 23 F.3d at 1359-60 (stating that fact that defendant's alleged misconduct in defectively designing saw in Missouri "is not without significance to the choice-of-law analysis" because that state is "concerned with deterring wrongful contact"). But those courts conclude that this interest does not outweigh the state of injury's interest in regulating conduct that results in its residents' death or injury, especially (1) because of the presumption in the Second Restatement that the law of the state of injury applies, and (2) if there are additional contacts between the plaintiff and state of injury. *See Dorman*, 23 F.3d at 1359-60 (holding that state of conduct's interest does not overcome presumption in Second Restatement that law of place of injury applies); *Natalini*, 185 S.W.3d at 252 (holding that state of conduct's (Missouri's) interest did not outweigh the state of injury's (Kansas's) interest in applying its law "for the protection of Kansas residents who were injured in Kansas as a result of wrongful conduct" in Kansas).

In this case, even if Missouri, Pennsylvania, and Colorado have some interest in regulating their residents' misconduct, that interest does not overcome the Section 175 presumption that the law of the state of injury, Indiana, applies.

*See* Restatement (Second) of Conflicts of Law § 175; *Natalini*, 185 S.W.3d at 252. Not only does the Section 175 presumption weigh in favor of applying Indiana law, but Indiana also has the greatest interest in applying its law under Sections 6 and 145 because the decedents were Indiana residents. *See Natalini*, 185 S.W.3d at 252).

Plaintiffs argue that Indiana law should not apply because the location of the crash was a fortuity. They contend that the engine could have failed anywhere, and the failure was caused by events occurring outside Indiana. Under the fortuitous crash doctrine, when the place of injury is more fortuitous than the place of misconduct or principal place of business, that state's interest in applying its law is lower than the interest of the place of conduct or business. *See, e.g.*, *Chicago*, 644 F.2d at 615 (applying the doctrine when an airplane crashed fortuitously in Illinois). I agree with defendants, however, that the airplane did not fortuitously crash in Indiana. Rather, one could reasonably expect that the airplane would crash there. The decedent John Swan was an Indiana resident, owned and stored the airplane in Indiana, and was flying entirely within Indiana when he crashed. Similarly, the decedent in *Peoples Bank & Trust Co. v. Piper Aircraft Corp.* stored his airplane and was killed in an airplane crash within his state of residence, and the court in that case stated that it was not a fortuity for the

plane to crash there. 598 F. Supp. 377, 380 (S.D. Fla. 1984). Thus, I conclude that Indiana law applies with respect to the issue of liability.

Compensatory Damages

With respect to compensatory damages, courts applying the Second Restatement recognize that the state of the injured plaintiff's residence has the greatest interest in applying its law to ensure the plaintiff is compensated for his injuries. *Natalini*, 185 S.W.3d at 252; *Goede*, 143 S.W.3d at 26-27; *see also Chicago*, 644 F.2d at 613 (concluding that domiciliary states' interests are served "by applying the law of the plaintiffs' domiciles as to issues involving the measure of *compensatory* damages") (emphasis in original). In this case, Indiana is the state of decedents' and plaintiffs' domicile, and it accordingly has the greatest interest in applying its compensatory damages law to ensure its residents are compensated for their injuries. Additionally, Indiana's interest in compensating its residents outweighs any interest of the other relevant states, Missouri, Pennsylvania, and Colorado, in applying their compensatory damages laws to regulate their resident defendants' misconduct. *See Acapolon Corp. v. Ralston Purina Co.*, 827 S.W.2d 189, 194 (Mo. 1992) ("Missouri's interest in assuring that its corporations comply with adequate design standards when designing products for manufacture and use abroad is less substantial than the foreign nation's interest

in protecting its citizens from injury and setting standards of conduct for the manufacture and distribution of products within its borders."). Accordingly, Indiana law should apply with respect to the issue of compensatory damages.

Punitive Damages

Although there are no Missouri or Eighth Circuit cases applying Missouri choice-of-law rules to determine which state's punitive damages law applies in a case like this, the Seventh Circuit has considered this issue, applying the Second Restatement's choice-of-law rules. *Chicago*, 644 F.2d at 611-21. In that case, a DC-10 jet airplane designed and built by defendant McDonnell Douglas Corporation crashed shortly after takeoff from O'Hare International Airport in the immediate vicinity of the airport. *Id.* at 604. After the crash, wrongful death actions were filed in Illinois requesting punitive damages awards. *Id.* Because Illinois applied the Second Restatement to choice-of-law issues, the Seventh Circuit used the most significant relationship test to determine which state's punitive damages law should apply. *Id.* at 611.

Applying this test, the court concluded that the only states with contacts to be taken account of were the state of injury, the state of defendant's misconduct, and the defendant's principal place of business. *Id.* at 612. Although it disregarded the state where the relationship was centered because none of the

possible interested states had punitive damages available, the court noted that, even if there were a conflict, "the place where the relationship is centered would seem to have a low interest in" applying its compensatory and punitive damages laws "merely because the parties' relationship was centered within its borders" when the "alleged egregious acts would not have occurred there." *Id.* at 612, 612 n.20. The court also disregarded the plaintiffs' states of residence first because those states

> do not have an interest in disallowing punitive damages because the decision to allow such damages is obviously designed to protect the interests of resident defendants, not to effectuate the interest of domiciliary states in the welfare of plaintiffs.

*Id.* at 612. Second, those states had no "interest in imposing punitive damages on the defendants" because domiciliary states only have an interest in compensating their residents, and once they "are made whole by recovery of the full measure of compensatory damages," those states's interests "are satisfied." *Id.* at 613.

Considering only the state of injury and the states of defendants' misconduct and place of business, the court described states' reason for imposing punitive damages as the "punishment of the defendant and the deterrence of future wrongdoing." By contrast, states that prohibit punitive damages do so to protect "defendants from excessive financial liability." *Id.* Defendant McDonnell

- 14 -

Douglas Corporation's principal place of business, Missouri, allowed punitive damages, which gave it an interest "in deterring wrongful conduct in design and manufacture." *Id.* However, the defendant's place of misconduct, California, prohibited punitive damages, giving it an equally strong interest in protecting the well-being of corporations like McDonnell that did business in the state. *Id.* at 614. Finally, the state of injury, Illinois, disallowed punitive damages, which also gave it an interest in protecting companies within that state. *Id.* at 615-16. Although the states of misconduct (California) and place of business (Missouri) by themselves "would have a greater interest" than the state of injury (Illinois), the court ultimately concluded that neither had a "more significant interest" than the state of injury because they were in "absolute conflict" and neither "has an interest greater than the other's." *Id.* at 616. Returning to the presumption created by Section 175 that the state of injury's law should apply unless some other state has a more significant interest, the court applied Illinois's law and prohibited punitive damages because neither California nor Missouri had a "more significant relationship" than the other. *Id.*

In this case, the defendants were allegedly negligent in several states. Specifically, plaintiffs claim the Ozark and Air Evac defendants performed defective maintenance on the airplane engine in Missouri. Under Missouri law,

punitive damages may be awarded if the defendant "showed complete indifference or a conscious disregard for the safety of others." *Stojkovic v. Weller*, 802 S.W.2d 152, 155 (Mo. 1991) (en banc). This promotes Missouri's polices of punishing defendants and deterring future wrongdoing. *See Chicago*, 644 F.2d at 613. Additionally, the Textron defendants' principal place of business is Rhode Island, and they allegedly designed the defective airplane engine in Pennsylvania. Neither Rhode Island nor Pennsylvania allows punitive damages in wrongful death actions. *Simeone v. Charron*, 762 A.2d 442, 449 (R.I. 2000); *Harvey v. Hassinger*, 461 A.2d 814, 816 (Pa. 1983). By barring the recovery of punitive damages, these states promote the policy of protecting defendants from excessive financial liability to ensure their economic well-being. *See Chicago*, 644 F.2d at 613. Defendant Western Skyways allegedly performed negligent maintenance on the airplane's engine in Colorado, which is also its principal place of business. Colorado allows punitive damages in wrongful death actions only "where the death is attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. Ann. § 13-21-203(3)(a). Like Rhode Island and Pennsylvania, Colorado thus has the policy of protecting defendants from punitive damages when they are strictly liable or negligent. Finally, the state of injury,

Indiana, also prohibits punitive damages. *Duram ex rel .Estate of Wade v. U-Haul Int'l*, 745 N.E.2d 755, 763 (Ind. 2001).

In this case, as in the *Chicago* case, the interested states have conflicting policies. Specifically, all of the interested states except Missouri have the same interest in prohibiting the imposition of punitive damages. Because the interested states' policies are in absolute conflict, no state has a greater interest than the other in applying its laws. *See Chicago*, 644 F.3d at 616. Accordingly, no state has significant enough interest in applying its law to overcome the Section 175 presumption that the law of the place of injury, Indiana, should apply. *See* Restatement (Second) of Conflicts of Law § 175 (providing that the state of injury's law should apply unless "with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6").

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for a choice-of-law determination [#126] is granted, and Indiana law applies to issues of liability and compensatory and punitive damages in this case.

*Catherine D. Perry*
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 20th day of November, 2009.